IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MELISSA A. LEE,<br>            Plaintiff,<br><br>       v.<br><br>CAROLYN COLVIN,<br>Acting Commissioner of Social Security,<br>            Defendant. | CIVIL ACTION<br><br><br><br>NO.  11-4641 |

DuBOIS, J.                                                                                                    June 10, 2014

**M E M O R A N D U M**

**I.      INTRODUCTION**

This is an action seeking review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying plaintiff Melissa Lee's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act").  The Court referred the case to United States Magistrate Judge Linda K. Caracappa for a Report and Recommendation ("R&R").  Judge Caracappa issued an R&R on January 30, 2014, in which she recommended that plaintiff's Request for Review be granted because the Administrative Law Judge ("ALJ") did not adequately discuss plaintiff's Global Assessment of Functioning ("GAF") scores.  On February 10, 2014, the Commissioner filed Objections.  On February 27, 2014, Judge Caracappa issued a Supplemental Report and Recommendation ("Supplemental R&R"), again recommending that plaintiff's Request for Review be granted, to which the Commissioner again filed Objections.  For the reasons that follow, the Court sustains the Commissioner's Objections, rejects that part of the R&R to which the Objection pertains, and determines that the decision of the ALJ was supported by substantial evidence.  Plaintiff's Request for Review is therefore denied.

## II.     BACKGROUND

The background of this case is set forth in detail in Magistrate Judge Caracappa's R&R and will be recited in this Memorandum only as necessary to address the issues presented by the Commissioner's Objections.

The ALJ, in her decision, found that plaintiff suffered four severe impairments: polysubstance abuse, bipolar disorder, degenerative disease of the cervical spine and shoulder, and obesity. (Administrative R. ("Tr.") 17). When considering all of these impairments, the ALJ found plaintiff disabled on the basis that plaintiff's bipolar disorder and polysubstance abuse met section 12.04 (Affective Disorders) and section 12.09 (Substance Addiction Disorders) of 20 C.F.R. pt 404, Subpart P, Appendix 1. Tr. 17. Pursuant to 20 C.F.R. § 416.935, the ALJ then considered whether plaintiff would meet any of the impairments listed in 20 C.F.R. pt 404, Subpt P, app'x 1 if plaintiff stopped using drugs and/or alcohol. (Tr. 18-19). To answer that question, the ALJ relied in part upon notes from plaintiff's treating physician, Dr. William Greenfield, from March through May 2009, a period during which plaintiff abstained from drugs and alcohol. (Tr. 19). That evidence, as detailed by the ALJ, stated, *inter alia*, that plaintiff:

- Appeared strong, less anxious. Reported going job hunting. 03/26/09
- Was talkative and engaging. 04/17/09
- Was clear thinking. Recovery is going well. 04/30/09
- Was upbeat and engaged. 05/01/09
- Was energetic and engaged. 05/22/09
- Is doing all right, very busy, wants to go to school. 05/28/09

(Tr. 19); *see also* R&R at 15-16 (summarizing Dr. Greenfield's notes). The ALJ relied on this evidence, *inter alia*, in concluding that without plaintiff's polysubstance abuse impairment, plaintiff would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. pt 404, Subpt P, app'x 1. (Tr. 19).

The ALJ further concluded that plaintiff, without considering her substance abuse, has the residual functional capacity ("RFC") to perform "simple repetitive tasks, in an environment with limited interaction with others and no interaction with the public." (Tr. 23). Ultimately, the ALJ concluded that plaintiff is capable of working in jobs that exist in significant numbers in the national and regional economies and therefore is not disabled. (Tr. 24).

Plaintiff requested review before the Appeals Council, which upheld the ALJ's decision on May 18, 2011. On July 22, 2011, plaintiff appealed that decision to this Court. On June 25, 2013, the Court referred the case to United States Magistrate Judge Linda K. Caracappa for a Report and Recommendation.

Before Judge Caracappa plaintiff argued that the decision of the ALJ was erroneous for several reasons. The R&R concluded that one of these arguments was meritorious: that the ALJ failed to consider the GAF scores of 50,[1] assigned to plaintiff by her treating physician, Dr. Greenfield. The Commissioner filed an Objection to the R&R, arguing that the ALJ need not consider the GAF scores because the fifth, most recent edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM-V") abandoned the GAF score as a measurement tool. The Supplemental R&R rejected the Commissioner's argument, reasoning that at the time the ALJ found plaintiff disabled, the GAF score was valid medical evidence that must be addressed. Accordingly, the Supplemental R&R again recommended that the case be remanded due to the ALJ's failure to discuss plaintiff's GAF scores.

The Commissioner filed Objections to the Supplemental R&R on two bases. First, the Commissioner argued that the ALJ's failure to address plaintiff's GAF scores does not require

---

[1] Under the fourth edition of the DSM, a GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning. *Diagnostic Statistical Manual of Mental Disorders*, Text Revision at 32 (4th ed. 2000) ("DSM–IV").

3

remand because plaintiff's case, if remanded, would receive a de novo hearing before an ALJ, at which point plaintiff's GAF score would be irrelevant under the new DSM-V. Second, the Commissioner argued that, in any event, the ALJ's failure to explicitly discuss the GAF scores does not warrant remand under *Gilroy v. Astrue*, 351 F. App'x 714, 715-16 (3d Cir. 2009).

For the reasons that follow, the Court agrees with the Commissioner that, because the ALJ addressed the issues on which plaintiff's GAF scores were based, the failure of the ALJ to specifically discuss the GAF scores does not warrant remand. In view of that determination, the Court does not reach the Commissioner's first objection that, on remand, plaintiff's GAF scores would be irrelevant under the current edition of the DSM.

### III. LEGAL STANDARD

Judicial review of the Commissioner's final decision is limited. This Court reviews the Commissioner's final decision to determine whether it applies the correct legal standards and is supported by substantial evidence. *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). "To determine whether a finding is supported by substantial evidence, [the Court] must review the record as a whole." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999) (citations omitted).

A district court makes a de novo determination of those portions of a magistrate judge's report and recommendation to which objection is made. 28 U.S.C. § 636(b)(1)(C). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

## IV. DISCUSSION

### A. The ALJ's Failure to Specifically Discuss Plaintiff's GAF Scores Does Not Warrant Remand

The R&R states that "where an ALJ fails to explain why [a claimant's] GAF scores have been discounted, a remand is necessary." R&R at 5. Because the ALJ in this case did not discuss plaintiff's GAF scores, the R&R recommends the case be remanded. The Commissioner Objects to the R&R's statement of law, arguing that, under the decision of the U.S. Court of Appeals for the Third Circuit in *Gilroy v. Astrue*, 351 F. App'x 714, 715-16 (3d Cir. 2009), an ALJ's failure to discuss GAF scores does not necessarily require remand. The Court agrees with the Commissioner: under certain circumstances, such as those presented in this case, an ALJ's failure to specifically discuss a GAF score does not require remand.

In *Gilroy*, the plaintiff's psychiatrist assigned her a GAF score of 45. *Id.* at 715. The psychiatrist's report, however, "did not express any opinions regarding [the plaintiff's] specific limitations." *Id.* In his opinion denying the plaintiff's claim, the ALJ made "repeated references to observations from [plaintiff's psychiatrist's] reports," but did not mention the GAF score. *Id.* at 716. The ALJ ultimately concluded that the plaintiff's "social anxiety limits her ability to interact with supervisors and coworkers and precludes interaction with the public," but found "additional limitations are not well supported by the totality of evidence." *Id.*

The U.S. Court of Appeals for the Third Circuit concluded that the ALJ's failure to explicitly reference the plaintiff's GAF score did not require remand. *Id.* Given that the psychiatrist failed to "express any opinions regarding specific limitations or otherwise explain the basis for his GAF rating," and that the ALJ discussed the underlying reports in which the GAF rating was contained, the court stated that it was "at a loss to understand how the ALJ could have responded to that rating in a more satisfactory manner." *Id.* The court also concluded that

5

the ALJ's finding that the plaintiff's "social anxiety limits her ability to interact with supervisors and coworkers and precludes interaction with the public," was "not in conflict with [the psychiatrist's] GAF rating, and no further comment was required." *Id.*

Other courts within this Circuit have similarly held that an ALJ's failure to discuss GAF scores does not necessarily require remand. *See Packard v. Astrue*, No. 11-cv-7323, 2012 WL 4717890, at *2-3 (E.D. Pa. Oct. 4, 2012) ("There is no formalistic rule, however, that requires this Court to remand a case when an ALJ fails — without more — to specifically mention a low GAF score."); *Rivera v. Astrue*, No. 12-cv-6622, 2014 WL 1281136, at *9 (E.D. Pa. March 27, 2014) ("A failure to discuss GAF scores does not necessarily constitute error where the ALJ conducts a thorough analysis of the medical evidence regarding plaintiff's mental impairments."); *Glover v. Astrue*, No. 10-cv-901, 2011 WL 1562267, at *6 ("[R]emand for failure to discuss a GAF rating is unnecessary where the ALJ discusses the observations from the psychiatric report that accompany that rating, and where the limitations provided by the ALJ in his assessment of Plaintiff's RFC are not in conflict with the GAF rating."); *Yukha v. Astrue*, No. 10-cv-5239, 2012 WL 641936, at *5 (E.D. Pa. Feb. 28, 2012) (DuBois, J.) ("[W]here GAF scores were not accompanied by other evidence of impairment, courts have not required ALJs to discuss them."); *Detwiler v. Colvin*, No. 12-cv-214, 2013 WL 5372875, at *10 (W.D. Pa. Sept. 24, 2013) ("[W]here a treating source has failed to provide specific limitations findings to explain a given GAF score, or to tie the GAF score into some explanation of a claimant's ability to work, the Court of Appeals for the Third Circuit has held that a court cannot be expected to provide a specific assessment of the GAF score." (citing *Gilroy*, 351 F. App'x at 716)).

From these decisions, it is clear that an ALJ's failure to specifically discuss the plaintiff's GAF rating does not require remand where (1) the report assigning the GAF score does not relate

6

the score to specific limitations, (2) the ALJ discusses the report within which the GAF rating is included, and (3) the ALJ's assessment of plaintiff's RFC is not in conflict with the GAF rating.

Whether all three off these factors are necessary to uphold an ALJ's decision is a question the Court need not reach because, in this case, all three factors are met. The reports from Dr. Greenfield assigning plaintiff a GAF score of 50 do not relate plaintiff's GAF scores to any specific limitations. *See* Tr. 294-304, 339-48. The ALJ discussed Dr. Greenfield's reports in detail in her decision. Tr. 17-23. And finally, the ALJ's finding that plaintiff can work "in an environment with limited interaction with others and no interaction with the public," is consistent with plaintiff's GAF score of 50. *See Gilroy*, 351 F. App'x at 716 (concluding that plaintiff's GAF rating of 45 was consistent with the ALJ's finding that the plaintiff's "social anxiety limits her ability to interact with supervisors and coworkers and precludes interaction with the public"). Accordingly, the Court sustains the Commissioner's Objection and rejects the R&R on this issue.

### B. Plaintiff's Other Arguments are Rejected

Beyond the failure to consider plaintiff's GAF scores, plaintiff makes two arguments as to why the ALJ's decision was not based on substantial evidence. Both arguments are rejected.

First, plaintiff argues that the ALJ failed to consider relevant evidence in determining that, without her substance abuse, she would not be disabled. Judge Caracappa considered this argument and concluded that the "majority of the records cited by plaintiff . . . are from July 2008 through February 2009," a period during which plaintiff was "still abusing substances and was hospitalized multiple times for substance abuse." R&R at 15. Continuing on this issue, Judge Caracappa determined that since March 2009 — the beginning of plaintiff's period of abstinence — "the majority of the treatment notes indicate that plaintiff was less anxious, clear thinking, upbeat, and plaintiff's medication was under control and she appeared stable." *Id.*

7

Judge Caracappa further concluded that the ALJ "clearly considered [plaintiff's medical records from March through June 2009], and cited [a] majority of them in finding that plaintiff's substance abuse is a contributing factor material to the determination of disability." *Id.* at 16. Having reviewed the record, the Court agrees with Judge Caracappa's conclusion on this issue. The ALJ considered the relevant evidence in determining that during plaintiff's period of abstinence, from March through June 2009, plaintiff's symptoms improved markedly.

Second, plaintiff argues that the opinion of Dr. Greenfield, plaintiff's treating psychiatrist, should have been given controlling weight "during the entire period, including periods of abstinence."[2]  Plaintiff's argument is flawed.

On February 27, 2009, Dr. Greenfield completed an RFC assessment for plaintiff in which he found that plaintiff had several moderately severe and severe impairments.  Tr. 312; R&R at 8.  If applicable and credited, that RFC assessment would support finding plaintiff disabled.  Tr. 42.  That RFC assessment, however, was designated by Dr. Greenfield as applying to a time period from September 1, 2008, to the day the assessment was completed, on February 27, 2009.  As the ALJ noted, and as is supported by the record, at that time "the claimant was clearly still abusing drugs."  Tr. 18.  Indeed, she had been discharged from Horsham Clinic following a drug overdose only eleven days prior to the completion of that RFC.  Tr. 18, 291-92.  Based on this evidence, the ALJ found that Dr. Greenfield's assessment was "consistent with the evidence of claimant's functioning considering her polysubstance abuse."  Tr. 18.

---

[2] On this subject, Judge Caracappa stated that the ALJ's failure to discuss the GAF scores given by Dr. Greenfield meant that "this court cannot determine what weight, if any, the ALJ gave to the opinion of Dr. Greenfield."  R&R at 20.  The Court has concluded that the ALJ's failure to discuss plaintiff's GAF scores was not in error, and thus rejects Judge Caracappa's conclusion on this subject as well.

Approximately one month after Dr. Greenfield's completion of plaintiff's RFC, plaintiff stopped abusing drugs. Tr. 341. Plaintiff's subsequent treatment notes over the next four months state that she was "alert and engaged," Tr. 341, "seems to be responding well to new therapy format," Tr. 341, "reports going job hunting," Tr. 341, "says she feels ok," Tr. 343, "says her recovery is going well," Tr. 343, "is looking better, she is clear thinking," Tr. 343, "may go back to work at Wendy's," Tr. 343, "seemed more alert, focused and engaged," Tr. 344, "appears stable and determined," Tr. 345, "says she is doing all right," Tr. 346, "she may go to school [to be a] medical assistant," Tr. 346., "is taking walks," Tr. 346, "taking the dog out," Tr. 346, and "engaged easily and enthusiastically," Tr. 347. Furthermore, during this time, plaintiff stated that she wanted to reduce her dosage of Seroquel, and Dr. Greenfield noted that "she may be fine without the Seroquel," and reduced her dosage by 100 mg. Tr. 340. While plaintiff's treatment notes do show some continuing problems, *see* Tr. 346 ("feels like she is going to jump out of her skin"); Tr. 347 ("seems more subdued [and] depressed [and] desperate today"); Tr. 348 ("somewhat drowsy and agitated"), the notes also show that when plaintiff was having a hard time she practiced using Behavioral Relaxation Therapy skills, which she said "really helped calm her down." Tr. 347.

After considering this evidence, the ALJ found that the limitations that Dr. Greenfield assessed to plaintiff in his February 2009 RFC were "consistent with plaintiff's functioning when she [was] abusing cocaine, marijuana, alcohol, and prescription drugs," but were not supported by "[t]he current evidence, since the claimant has been abstinent." Tr. 23.

Plaintiff disputes this conclusion, arguing that Dr. Greenfield's assessment of plaintiff's GAF score remained unchanged at 50 both during her drug use and during her period of abstinence. On this issue, plaintiff states that "we could extrapolate from [the unchanged GAF

scores] that Dr. Greenfield believed that the plaintiff['s] functioning did not improve to the extent that it would enable her to engage in substantial gainful work." Pl.'s Br. 18. The Court rejects this argument.

First of all, a GAF score of 50 does not indicate that plaintiff could not engage in substantial gainful work. *See Hillman v. Barnhart*, 48 F. App'x 26, 30 (3d Cir. 2002) ("When Hillman refrained from abusing alcohol, even for a limited period, his GAF score rose to 50, a score which indicates he could perform some substantial gainful activity and lends further support to the ALJ's conclusions that most of Hillman's problems stemmed from alcoholism."). A GAF score of 50 indicates only "serious symptoms or *any* serious impairment in social, occupational, or school functioning." DSM-IV at 32 (emphasis added). As previously discussed, the ALJ's finding that plaintiff can work "in an environment with limited interaction with others and no interaction with the public," is consistent with plaintiff's GAF score of 50, and "no further comment was required." *Gilroy*, 351 F. App'x at 716.

More fundamentally, plaintiff misunderstands the role of this Court when reviewing the ALJ's decision. The relevant question is not whether plaintiff agrees with the ALJ's interpretation of the Dr. Greenfield's opinions, or even if it was the best interpretation, but rather whether reasonable minds could find the evidence was "adequate to support [the ALJ's] conclusion.'" *Hartranft*, 181 F.3d at 360 (quoting *Pierce*, 487 U.S. at 565).

In this case, the Court concludes that reasonable minds could find that Dr. Greenfield's notes covering plaintiff's period of abstinence are adequate to support the ALJ's conclusion that plaintiff's condition had improved to the point where the February 2009 RFC was no longer supported by the evidence. In short, while the ALJ could have "extrapolate[d]" from plaintiff's

GAF scores that plaintiff remained disabled, [3] as argued by plaintiff, *see* Pl.'s Br. 18, she also could have "extrapolate[d]" from the underlying notes that accompany those GAF scores that plaintiff's condition had significantly improved. The ALJ considered the evidence and chose the latter interpretation. That interpretation is supported by substantial evidence.

### C.  The ALJ's Decision was Based Upon Substantial Evidence

The Court concludes that the ALJ's decision finding plaintiff not disabled was based on substantial evidence. In addition to the treatment notes written during plaintiff's March 2009 period of abstinence, other evidence supported the ALJ's determination that plaintiff could engage in substantial gainful activity when she was not abusing drugs. Plaintiff testified before the ALJ that she did the household chores, Tr. 32, that she went grocery shopping once in a while, Tr. 32, that she did not have any problems walking, standing, or sitting, Tr. 31, that her Lexapro "works pretty well" for her depression, Tr. 33, and that it "pretty much keeps [her] to a limit of feeling ok," Tr. 34. Furthermore, the state psychological consultant found that plaintiff

---

[3] The Court notes that it is not altogether clear that the ALJ could make such a conclusion were the decision made today. Subsequent to the ALJ's decision in this case, the Social Security Administration ("SSA") issued the following Administrative Message:

> [A] GAF needs supporting evidence to be given much weight. By itself, the GAF cannot be used to "raise" or "lower" someone's level of function. The GAF is only a snapshot opinion about the level of functioning. It is one opinion that we consider with all the evidence about a person's functioning. *Unless the clinician clearly explains the reasons behind his or her GAF rating, and the period to which the rating applies, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis.*

Admin. Message 13066, Global Assessment of Functioning (GAF) Evidence in Disability Adjudication (Soc. Sec. Admin. July 22, 2013) (emphasis added). Thus, in situations such as this where the clinician has not "clearly explain[ed]" the reasons for his GAF score, the SSA has found that the GAF score does not provide a "reliable longitudinal picture" of a claimant's mental functioning. In this case, plaintiff is attempting to do exactly what the SSA has warned against: taking "snapshot" opinions and making a longitudinal conclusion as to plaintiff's mental functioning.

had no more than moderate limitations at a time when plaintiff's polysubstance abuse was in remission. Tr. 261-75. Moreover, as discussed by the ALJ, a brief period of abstinence in the summer of 2008 also resulted in signs of improvement for plaintiff. *See* Tr. 277 (describing plaintiff's mood as "good" and "euthymic" after two weeks of sobriety); *id* at 279 (describing plaintiff's mood as "euthymic," and "motivated for recovery" after four weeks of sobriety).

Based on the foregoing evidence, the Court concludes that substantial evidence supported the ALJ's decision that, but for her substance abuse, plaintiff would not be disabled. An appropriate order follows.